#31073, #31084, #31085-a-MES
**2026 S.D. 43**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

MICHAEL A. GIBSON,  Plaintiff and Appellant,

v.

GREG GIBSON, Individually,
JOAN GIBSON, Individually,
GIBSON FAMILY LIMITED
PARTNERSHIP, a South Dakota
Limited Partnership, ROBERT M.
RONAYNE, and RONAYNE LAW
OFFICE, P.C.,  Defendants and Appellees.

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CODINGTON COUNTY, SOUTH DAKOTA

THE HONORABLE CARMEN MEANS
Judge

JONATHAN A. HEBER
ABIGALE M. FARLEY of
Cutler Law Firm, LLP
Sioux Falls, South Dakota

Attorneys for plaintiff and
appellant.

EDWIN E. EVANS
RYAN W. W. REDD of
Evans, Haigh & Arndt, LLP
Sioux Falls, South Dakota

Attorneys for defendant and
appellee Gibson Family Limited
Partnership.

ARGUED
FEBRUARY 11, 2026
OPINION FILED **07/01/26**

ZACHARY W. PETERSON
JACK H. HIEB of
Richardson, Wyly, Wise,
    Sauck & Hieb, LLP
Aberdeen, South Dakota

Attorneys for defendants and
appellees Robert Ronayne and
Ronayne Law Office, P.C.


SANDER J. MOREHEAD
JACOB R. SCHNEIDER of
Woods, Fuller, Shultz & Smith, P.C.
Sioux Falls, South Dakota

Attorneys for defendants and
appellees Greg Gibson and Joan
Gibson.

SALTER, Justice

[¶1.] Michael Gibson appeals the circuit court's decision dismissing his lawsuit as a sanction for violating the subpoena rules set out in SDCL 15-6-45(b). Among a series of less serious violations, Michael's counsel obtained his mother's medical records through a subpoena while a motion to quash was pending, later offering an unsustainable legal argument, refusing to acknowledge any wrongdoing, and shifting blame to others. Michael's arguments on appeal are much the same. We affirm.

## Factual and Procedural History

### *GFLP and the current action*

[¶2.] Delores Gibson established the Gibson Family Limited Partnership (GFLP) in 2002 as an estate planning tool, largely to distribute 2,060 acres of farmland located in Codington and Deuel counties to her children. Delores contributed the farmland and acts as GFLP's general partner with sole authority over partnership decisions. Her sons, Michael and Greg Gibson, are equal limited partners.

[¶3.] Prior to this current action, Michael has twice unsuccessfully sued Greg, or Delores, or both for claims relating to GFLP. In the more recent of the two, Michael sued GFLP and Delores, alleging she had breached fiduciary duties as the general partner. We affirmed a jury's defense verdict and the circuit court's denial of Michael's request to disassociate from GFLP in *Gibson v. Gibson Family Ltd. Partnership*, 2016 S.D. 26, 877 N.W.2d 597. And in the older, first action, a jury

rejected Michael's claims against Greg and Delores, which also included an allegation that she had breached her fiduciary duties. *Id.* ¶ 3, 877 N.W.2d at 599.

[¶4.] Michael commenced this third action in October 2023 claiming that Delores has been unduly influenced by Greg and his wife, Joan. The case involves an underlying land transaction in which Greg purchased land from GFLP. Michael claims the terms were too favorable and preempted his own efforts to acquire the land. Michael also named as a defendant Robert Ronayne, an attorney who previously represented GFLP and assisted with the land sale to Greg.

[¶5.] At the heart of the dispute is Michael's overarching theory that Delores lacks capacity to make decisions for GFLP. He claims that Greg is acting as GFLP's de facto general partner and has violated various fiduciary duties in concert with Ronayne. Michael also alleges that Greg and Joan tortiously interfered with his existing and prospective business relationship with GFLP.

[¶6.] Delores is not a defendant in this action. Through his lawyers, Michael embarked on a sustained effort to use subpoenas issued pursuant to SDCL 15-6-45 (Rule 45) to obtain Delores's personal financial and medical records, as well as information relating to Greg and Joan, and to GFLP. Michael was represented by attorney Paul Sortland of Minneapolis, and, although Sortland associated with local counsel, the subpoenas he issued often failed to conform to Rule 45.

[¶7.] For instance, in May 2024, Sortland and local counsel issued several subpoenas to non-parties, including banks and Schwan Financial Group, which provided tax and financial planning for GFLP. After Schwan was served, its lawyer contacted Michael's attorneys and informed them that the subpoena failed to

conform with Rule 45 because there had been no compliance with Rule 45(b)'s pre-service notice requirement.[1]  Local counsel also noted that all of the previously issued subpoenas failed to state that they were issued in the name of the presiding judicial officer—a specific requirement of Rule 45(a).  Michael's attorneys corrected the errors and issued a belated "notice" for the already-served subpoenas.

[¶8.]        In August 2024, Michael sought to depose Delores, but GFLP resisted and submitted letters from psychologist Dr. Lee Hendricks and Dr. Sarah Reiffenberger, a medical doctor.  Both doctors had experience treating Delores and opined that a deposition would be stressful for her and would detrimentally impact her mental state.  In a letter contained in the record, Dr. Reiffenberger stated that Delores had been taking medication to treat "moderate Alzheimer's dementia" since 2021.  In the end, Delores was not deposed.

[¶9.]        Later, in September 2024, Sortland issued notice of depositions for Dr. Hendricks and Dr. Reiffenberger, seeking information regarding Delores's health and mental condition.  A month later, Sortland subpoenaed Dr. Reiffenberger, requesting documents used in the preparation of her earlier letter.  The subpoena was issued in the name of the presiding judicial officer, but the mandatory language from Rule 45(a), though included, was not directly above the signature line as

---

1.    Rule 45(b) states, "Before a subpoena commanding the production of documentary evidence is served on the person to whom it is directed, a notice and copy of the subpoena must be served on each party to the matter pending."  SDCL 15-6-45(b).

required by the rule.[2]

### *The November 15 subpoenas*

[¶10.]     But these areas of noncompliance with Rule 45, though not optimal, became secondary to a larger problem related to several subpoenas issued on November 15, 2024, to Prairie Lakes Hospital in Watertown, as well as several other Prairie Lakes clinics, seeking Delores's medical information.  The subpoenas required compliance by December 6, 2024, and, despite being filed electronically, they were unaccompanied by a separate notice of intent to serve.

[¶11.]     On the following Monday, November 18, GFLP, after seeing copies of the electronically filed November 15 subpoenas, moved to quash the subpoenas and for a protective order concerning Delores's medical records and bills.  GFLP argued the records were privileged and the subpoenas did not comply with the Health

---

2.     Rule 45(a) states in part:

> A subpoena shall also include the following text in bold, capitalized type immediately above the signature of the individual signing the subpoena:
>
> YOU SHOULD TREAT THIS DOCUMENT AS YOU WOULD A COURT ORDER.  IF YOU FAIL TO COMPLY WITH THE COMMAND(S) IN THIS DOCUMENT WITHOUT ADEQUATE EXCUSE, THE COURT MAY FIND YOU IN CONTEMPT AND ASSESS MONETARY OR OTHER SANCTIONS AGAINST YOU.
>
> YOU HAVE CERTAIN OBLIGATIONS AND RIGHTS AS IT CONCERNS THIS DOCUMENT, INCLUDING THOSE SET FORTH IN SDCL § 15-6-45(b)-(g).
>
> YOU SHOULD CONSIDER CONTACTING AN ATTORNEY REGARDING YOUR OBLIGATIONS AND RIGHTS.

SDCL 15-6-45(a).

Insurance Portability and Accountability Act (HIPAA). Initially unknown to GFLP's attorneys, the subpoenas were served the same day as GFLP's motion to quash. Neither GFLP, nor any other party, immediately scheduled a hearing on the motion to quash.

[¶12.] Also unknown to GFLP, was the fact that Prairie Lakes Healthcare System complied with the November 15 subpoenas on December 3 by furnishing Delores's medical information. In an affidavit, Prairie Lakes's health information specialist Jodi LeBlanc stated that she received Sortland's subpoena by service on November 18, and on December 2, she contacted Sortland's secretary. According to LeBlanc, "[Sortland's secretary] informed me that all parties would have access to the records because they were working together." LeBlanc sent Delores's medical records to Sortland's office the next day. LeBlanc stated she had no knowledge of the ongoing discovery dispute and followed the subpoena's instructions to treat it as a court order.

[¶13.] Prior to any resolution on the subpoena disputes, Michael moved for leave to amend his complaint. Among other changes, Michael alleged additional facts to support his undue influence claims, some of which came from the medical records that had been disclosed by LeBlanc to Sortland. Although Sortland's office received the medical records on December 3, he did not disclose his possession or share the records with GFLP until December 26 when he emailed GFLP's attorneys regarding the proposed amended complaint.[3]

---

3. On January 6, 2025, Sortland issued an additional subpoena to Dr. Hendricks commanding the release of Delores's medical information.

(continued . . .)

[¶14.] In January 2025, GFLP moved for sanctions in the form of dismissal for "gross violation of discovery rules and procedure." Greg and Joan joined in the motion. In the alternative, GFLP proposed other sanctions including a protective order for Delores's medical history, revocation of Sortland's pro hac vice status, and attorney fees and costs incurred in bringing the motion to quash. In its accompanying brief, GFLP outlined an alleged history of discovery abuse by Sortland, focusing on his non-compliance with Rule 45 generally, and, more specifically, his use of subpoenas to obtain Delores's medical records after GFLP filed its motion to quash.

[¶15.] In response, Sortland argued GFLP's sanction request was "heavy-handed" and aimed at restricting Michael's access to outcome-determinative evidence, which, in his view, he was "rightfully entitled to" obtain. According to Sortland, the requested sanction and motion to quash reflected GFLP's dilatory conduct. Further, Michael argued that Delores's attorney—who also represented GFLP—waived her medical privilege when he submitted letters from her doctors concerning her mental state.

[¶16.] Particularly relevant to this appeal is Sortland's interpretation of Rule 45(b). The text of the rule allows a court to quash a subpoena "upon motion made promptly," and Sortland argued that this meant the circuit court must act on GFLP's motion to quash prior to the subpoena's stated time of compliance. Under

_____

(. . . continued)
According to his affidavit, GFLP's attorney stated he only learned of the subpoena on January 8 when Dr. Hendricks informed his office.

-6-

Sortland's legal theory, if the court did not act prior to the time of compliance it "no longer has jurisdiction[.]"[4]

[¶17.] The circuit court considered GFLP's motion to dismiss at a March 2025 hearing. In his argument, counsel for GFLP recounted the history of noncompliance with Rule 45 by "a pro hac vice" attorney, culminating with the Prairie Lakes subpoenas:

> What is the more important problem and really why we're here today is because it was the plaintiff's counsel's use of this [c]ourt's authority in order to wrongfully obtain [Delores] Gibson's privileged medical records from her healthcare providers. . . . [A]t the heart[,] subpoenas were issued to medical providers for records, objections were made, those objections were ignored, records were obtained and those records were reviewed, information from those privileged records was incorporated into an amended complaint and then it was published in a public filing with this [c]ourt.

[¶18.] In his rejoinder, Sortland justified obtaining Delores's medical records from Prairie Lakes despite the objection and motion through the same dubious textual reading of Rule 45(b) he had made in his written submissions. According to Sortland, the rule "requires not only that the objection be brought immediately, but also that the motion be heard by the [c]ourt no later than the time for production."

[¶19.] Beyond this, Sortland stated that "we have been following the rules" and shifted the blame to counsel for GFLP and Prairie Lakes:

---

4. Sortland soft-pedaled Rule 45(b)'s separate notice requirement, asserting it "hardly seems rational" to believe that Rule 45(b) required service of more than a copy of the subpoena. Although this argument does not determine the outcome here, we note that the text of Rule 45(b) requires, by its plain terms, service on each party of both "a notice *and* copy of the subpoena." (Emphasis added.)

> [T]hey took advantage of that notice by filing an objection but they didn't do anything beyond that. The rules I would assume that the objecting party would contact the witness to make sure that they don't provide anything and that was not done in this instance. And that's another reason to believe what we were doing was correct.
>
> * * *
>
> We gave them these medical records a little bit later and so there's nothing wrong with what we did. And let's go back to the duties of Prairie Lakes. I never received any call from Prairie Lakes. I never spoke with this Jodi [LeBlanc]. My secretary didn't speak with Jodi about any specifics to do with in [sic] case.

[¶20.] Even on the cold record, it is apparent that the circuit court was disappointed by Sortland's response:

> Mr. Sortland, I have to say that your response to the motion to dismiss moves the needle closer to dismissal than further away from it. Your cavalier disregard of the procedures that happened on a repeated basis concerns this [c]ourt to no end.

[¶21.] Sortland eventually invoked relativism and offered something of an indifferent apology:

> I mean there's a lot of people who don't follow the rules with respect to subpoenas, I think the [c]ourt knows that. We tried our best to follow them as we – as we read the rules and so I apologize if anything wrong happened[.]

[¶22.] The circuit court was unmoved and dismissed Michael's case as a sanction. In its oral decision, the court characterized Sortland's conduct both as a lack of "professional courtesy" and a violation of the applicable rules. The transcript makes clear that the court was genuinely troubled with what it viewed as a lack of acceptance of responsibility:

> I look at this case as you blatantly and in bad faith disregarded the rules and the statutes that are in place to protect the

> privileged and private medical records and that after you did so you did take a no harm no foul approach to it. Doesn't matter that they objected, I just assumed everything was okay and I got these records anyway. I'm just astonished at your response and as I say when I listen to your response and I listen to the abuse of discovery that has occurred here I can't think of any way to be assured that you aren't going to engage in this kind of conduct again other than to dismiss this case because you have no remorse for what you did[.]

### *The motion to reconsider*

[¶23.] In April 2025, Michael's local counsel filed a motion to reconsider. In his supporting brief, Michael argued the following: (1) dismissal without prior warning was disproportionate to the alleged discovery violation; (2) the subpoenas complied with Rule 45 and there was not a court order prohibiting discovery of the records; (3) Michael had no reason to know the healthcare organizations did not comply with HIPAA prior to releasing Delores's medical records; (4) even if Rule 45 was violated, it was not due to the willfulness, bad faith, or fault of Michael, as the client; (5) the circuit court, potentially, impermissibly considered the parties' litigation history; and (6) the court should have addressed other pending motions at the previous hearing.

[¶24.] Regarding compliance with Rule 45 and the Prairie Lakes subpoena, Michael's local counsel justified obtaining Delores's medical records despite the pending motion to quash with the rewarmed argument that GFLP failed to schedule a hearing:

> There's nothing in the South Dakota Rules of Civil Procedure or clearly established case law in South Dakota or otherwise or South Dakota statute that mandates that when a party serves or files an objection to or a motion to quash or for protective order regarding documents or healthcare records that that

automatically stays the discovery and production by a third party subpoenaed[.]

[¶25.] In a reflective ruling from the bench, the circuit court declined to change its earlier decision to grant the motion to dismiss as a sanction for Sortland's conduct:

> [I] want[] to be sure that I haven't acted with emotion as opposed to with reason and so while I've been waiting for this hearing, as I've been anticipating this hearing, I thought about the findings that I made and I thought about the importance I think of attorneys not to lose the forest for the trees and I think that's what happened here and in doing so important privileged information was gained in a way that I continue to feel was dishonest and egregious and so I granted this motion to reconsider primarily because I didn't want my displeasure at Mr. Sortland to be unfairly reflected on his client[.]

[¶26.] Now with the assistance of substitute counsel, Michael appeals raising three issues which we have consolidated and restated as follows:

1. Whether the circuit court erred by concluding that Sortland's conduct constituted a failure to "comply with this chapter" as required by Rule 41(b)'s provisions authorizing involuntary dismissal.

2. Whether the circuit court abused its discretion when it dismissed the action as a sanction.[5]

## Analysis and Decision

### Asserted jurisdictional challenges

[¶27.] GFLP and Ronayne each challenge our appellate jurisdiction. First, GFLP asserts that Michael failed to satisfy SDCL 15-26A-23's bond requirements to

---

5. By notice of review, Greg and Joan, and Ronayne have challenged a decision by the circuit court denying their motions to dismiss Michael's fiduciary duty claims. However, given our disposition of Michael's issues, we do not need to describe the decision further or reach the merits of the notice of review question.

perfect his appeal, which GFLP incorrectly identifies as a jurisdictional impediment. *See Bison Tp. v. Perkins Cnty.*, 2002 S.D. 22, ¶ 13, 640 N.W.2d 503, 506 (stating the failure to satisfy bond requirements does not deprive the Court of jurisdiction). Regardless, Michael has confirmed that he obtained a bond in the sufficient amount.

[¶28.] Next, Ronayne argues we lack jurisdiction to review the circuit court's taxation of costs. This argument is wide of the mark for several reasons, the first of which is that Michael is not seeking discrete review of the taxation of costs. In his reply brief, Michael acknowledges that "[i]f the judgment is affirmed, so is the taxation of costs." But, he asserts, "if the judgment is reversed, the taxation of costs is automatically vacated" under SDCL 15-17-56, which provides that "[d]isbursements taxed by a party, in the trial court, who did not prevail on appeal, are void."

[¶29.] And, in any event, there is no jurisdictional barrier to reviewing the circuit court's taxation of costs if Michael had elected to challenge it. After the court's order taxing costs, Michael timely appealed the court's amended order. *See Picardi v. Zimmiond*, 2005 S.D. 24, ¶ 18, 693 N.W.2d 656, 662 ("When [the order for costs] is made subsequent to the entry of a judgment the order may not be reviewed upon appeal from the judgment, but only by a direct appeal from the order." (alteration in original) (citation omitted)).

***Violating the rules of civil procedure***

[¶30.] A circuit court may involuntarily dismiss a civil matter "[f]or failure of the plaintiff to prosecute or to comply with [the rules of civil procedure contained in

-11-

Chapter 15-6] or any order of court[.]" SDCL 15-6-41(b). The relevant portion of the rule permits dismissal for a party's failure to comply with our rules of civil procedure contained in Chapter 15-6.[6]

[¶31.]    Here, of course, the operative rule of civil procedure for our inquiry is Rule 45(b) which governs the procedure for objecting to subpoenas. In its entirety, the rule states:

> A subpoena may command the person to whom it is directed to produce the books, papers, documents, or tangible things designated therein, regardless of whether the attorney also notices the person's deposition or commands the presence of the person to which it is directed to give testimony at a hearing or trial. Before a subpoena commanding the production of documentary evidence is served on the person to whom it is directed, a notice and copy of the subpoena must be served on each party to the matter pending. *The court, upon motion made promptly and in any event at or before the time specified in the subpoena for compliance therewith, may:*
>
> (1) *Quash or modify the subpoena if it is unreasonable and oppressive*; or
>
> (2) Condition denial of the motion upon the advancement by the person in whose behalf the subpoena is issued of the reasonable cost of producing the books, papers, documents, or tangible things.

SDCL 15-6-45(b) (emphasis added).

[¶32.]    The straightforward order of operations provided in Rule 45(b) allows other parties the opportunity to object to a subpoena's request prior to the time of

---

6.    On appeal, GFLP argues that Sortland's conduct violated HIPAA, Delores's privacy under South Dakota law, and the rules of professional conduct. Michael disputes each of these arguments and asserts that he would have eventually obtained Delores's medical records. But we see the merits of these claims as somewhat beside the point in this appeal because Rule 41(b) only authorizes involuntary dismissal for a violation of Chapter 15-6.

compliance. SDCL 15-6-45(b); *see also* Fed. R. Civ. P. 45 advisory committee's notes to 1991 amendments ("The purpose of such notice is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things."). But the rule imposes a timeliness obligation on objecting parties to act by filing a motion to quash "promptly and in any event at or before the time specified in the subpoena for compliance." SDCL 15-6-45(b).

[¶33.]    Rule 45(b) does not explicitly require the court to rule on a motion to quash before the time specified in the subpoena for compliance. It does, however, contemplate the court's ability to "quash or modify the subpoena," and, logically, a court could not regulate the issuance of subpoenas in this way if a subpoenaed party complied before the court could act, rendering the issue moot and subverting the court's supervisory role.

[¶34.]    As indicated, Sortland's submissions to the circuit court and his comments at the March 2025 hearing reflect a self-serving textual interpretation of Rule 45(b) under which the rule, in his view, "requires not only that the objection be brought immediately, but also that the motion be heard by the [c]ourt no later than the time for production." From this, Sortland reasoned that because GFLP did not immediately seek a hearing on their motion to quash and the circuit court did not rule, he could simply "disregard[]" the challenge to the subpoenas.

[¶35.]    This argument is brazen, and we unequivocally reject it. Rule 45(b) does *not* require a court to rule on the motion before the time designated in the subpoena for compliance, and, instead, the plain design of the rule contemplates the opposite—forestalling compliance *until* the court has acted. The contrary rule that

Sortland proposed to the circuit court would allow the party issuing the subpoena to unilaterally control the court's calendar and preempt the court's judicial supervision by compressing the time set out in the subpoena for compliance.

[¶36.] On appeal, Michael's principal argument is that the circuit court did not adequately articulate a violation of Chapter 15-6 through its findings. But after reviewing the circuit court's written order and judgment incorporating its earlier oral decision, we have no difficulty understanding that the violation upon which the court relied was Sortland's conduct based on the inaccurate legal interpretation of Rule 45(b) set out above. *See Repp v. Van Someren*, 2015 S.D. 53, ¶ 10, 866 N.W.2d 122, 126 ("Findings must be entered 'with sufficient specificity to permit meaningful review.'" (citation omitted)). With this record before us, we hold the court's findings of fact and conclusions of law are sufficient to allow meaningful appellate review.

### *Involuntary dismissal under Rule 41(b)*

[¶37.] Although we have a stated "institutional preference for resolving cases on the merits," Rule 41(b) operates as a "tool for sanctioning a party for delay or disobedience in the processing of a case." *Arrowsmith v. Odle*, 2025 S.D. 70, ¶ 15, 30 N.W.3d 15, 21 (citation modified). The rule provides broad authority for a circuit court to dismiss a case, but as we have explained, the rule prescribes dismissal with prejudice and should only be applied where it is proportionate to a party's transgressions. *See Smith v. Gold Dust Casino*, 526 F.3d 402, 405 (8th Cir. 2008) (citation omitted) ("We have repeatedly stressed that the [41(b)] sanction imposed by the district court must be proportionate to the litigant's transgression[.]" (citation modified)). To affirm a dismissal for failure to comply with the rules of

civil procedure, there should be a clear record of an egregious rule violation. *See Arrowsmith*, 2025 S.D. 70, ¶ 24, 30 N.W.3d at 23 (reviewing the record for egregious conduct in a Rule 41(b) failure to prosecute case).

[¶38.]     Using this egregious standard, we have reviewed Rule 41(b) dismissals in several decisions involving a party's failure to prosecute a claim, and we recently identified a series of five factors to assist circuit courts determining motions to dismiss for failure to prosecute. We see no principled reason why these factors could not be just as helpful to courts considering a motion for dismissal as a sanction:

> (1) [W]hether the plaintiff had received notice that further delays would result in dismissal; (2) whether the judge adequately assessed the efficacy of lesser sanctions before dismissal was ordered; (3) whether the conduct of the party or the attorney was willful or in bad faith; (4) the degree of actual prejudice to the opposing side or the substantial likelihood of future prejudice in the event of further delay; and (5) the merits of the plaintiff's claim for relief.

*Olson v. Huron Reg'l Med. Ctr. Inc.*, 2025 S.D. 34, ¶ 40, 24 N.W.3d 405, 417 (citation omitted).[7]

[¶39.]     Although these factors are not expressly referenced in the circuit court's analysis, many of its findings implicate the factors. For instance, the court

---

7.     We use three standards to review a Rule 41(b) dismissal. *Arrowsmith*, 2025 S.D. 70, ¶ 12, 30 N.W.3d at 20 (citing *Olson*, 2025 S.D. 34, ¶ 17, 24 N.W.3d at 412). "[W]e review the circuit court's findings of fact under the clearly erroneous standard, while we apply the de novo standard when reviewing its conclusions of law." *Id.* (alteration in original). "We then evaluate 'the circuit court's ultimate decision to dismiss'" for failure to comply with Chapter 15-6 for "'an abuse of discretion.'" *Id.* (citation omitted). "An abuse of discretion is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." *Id.* (citation omitted).

made specific findings that Sortland had violated Rule 45 on multiple occasions and that he had "blatantly and in bad faith disregarded" the rules. These findings are supported by the record, particularly given Sortland's outright failure to acknowledge and take responsibility for his actions, paired with an implausible textual interpretation of Rule 45(b) that would have allowed him to bypass judicial supervision of the court's subpoena power.

[¶40.] And though it is true that the circuit court had not addressed the prior alleged Rule 45 violations, Sortland had been advised of multiple instances of noncompliance and even corrected some subpoenas. And these were not isolated instances, but rather occurred throughout the pendency of the case to varying degrees.

[¶41.] The circuit court expressly recognized the prejudice to opposing counsel and to Delores—a nonparty—caused by Sortland's decision to disregard the motion to quash and proceed to surreptitiously obtain her privileged documents. The court did not, however, consider the efficacy of other, less-drastic sanctions, and its specific determination that dismissal was necessary to prevent further abuses by Sortland overlooked the option of simply revoking his pro hac vice status and ending his involvement in the case. Interestingly, GFLP's motion to dismiss sought less-serious sanctions as an alternative remedy, but Sortland, himself, did not seek alternate, less-drastic sanctions, at least not initially.

[¶42.] Instead, in what appears to have been an all-or-nothing strategy, Sortland categorically denied doing anything wrong. The idea that the remedy of dismissal is too harsh because it unfairly punishes Michael for Sortland's conduct

was first introduced in the motion to reconsider, but the arguments offered at the April 2025 hearing again focused on claims that Sortland had not violated any rules and that Michael was entitled to Delores's medical records in any event.

[¶43.]      The arguments by substitute counsel on appeal are similarly focused on claims of insufficient findings under Rule 41(b), GFLP's lack of standing for the motion to quash, and Sortland's lack of culpability.  The lesser-alternatives argument is most developed in Michael's appellate reply brief.  Even though the argument was not initially presented to the court and was slow to develop, the circuit court should have considered other, less-drastic alternatives to dismissal with prejudice.

[¶44.]      But this does not necessarily mean that the circuit court abused its discretion.  In this regard, the court's decision to select the exceptional sanction of dismissal must be viewed in the context of this *particular case* which is, itself, exceptional.

[¶45.]      To begin, it is difficult to overstate the significance of Sortland's conduct as he attempted to obtain Delores's medical records.  An attorney issuing subpoenas does so in the name of the court.  SDCL 15-6-45(a).  As one court astutely observed, the injury occurring from "misuse of the subpoena power is not limited to the harm it inflicts upon the parties." *Coleman-Hill v. Governor Mifflin Sch. Dist.*, 271 F.R.D. 549, 552 (E.D. P.A. 2010) (citation omitted).  Rather, misuse of the subpoena power also "compromises the integrity of the court's processes." *Id.* (citation omitted).  Indeed, the subpoena must inform the recipient that they should "treat this document as [they] would a court order" in bold, capitalized typeface.

SDCL 15-6-45(a).  Along with the authority to act in the name of the court, comes the court's power to judicially enforce the attorney's request through contempt.  *See* SDCL 15-6-45(f).

[¶46.]    Here, Sortland misused this authority and overlooked the solemn responsibility accompanying it.  But perhaps even more problematic, he refused to accept responsibility.  Indeed, when confronted, Sortland presented poorly constructed arguments that marginalized his misconduct by stressing his client's strategic need for discovery, the medical records' relevance, and his view that others failed to properly contest the subpoenas.  Acting under the auspices of the court, he issued subpoenas for Delores's private medical information and obtained it without advising the other parties (including the party who had specifically objected and moved to quash), and without telling the custodian of the records that there was an objection—in fact, LeBlanc's affidavit stated Sortland's office related the opposite.  Viewed in its totality, Sortland's conduct satisfies Rule 41(b)'s egregious standard.

[¶47.]    The circuit court noted its reluctance "to dismiss actions and strip parties of their right to have things litigated because of errors by their counsel" but it also considered its aversion in the particular context of this case:

> [B]ut when I weigh that risk against the idea that there have already been previous litigations with this family and with these exact same people, I have less of a concern that I am stripping Michael Gibson of some inherent right that he has to move this case forward.

[¶48.]    Michael argues the circuit court should not have considered his prior litigation because "[n]o evidence was submitted . . . concerning such litigation, the last of which was terminated in 2016."  But this assertion is not entirely accurate.

-18-

While it is true that the court did not receive evidence at either the March or April hearing, counsel for Greg and Joan submitted an affidavit that explained the prior litigation, which was also described in our 2016 published opinion. *See Gibson*, 2016 S.D. 26, 877 N.W.2d 597. And, beyond this, we note that despite Michael engaging substitute counsel on appeal, his arguments remain largely unchanged and detached from a candid acceptance of responsibility.

[¶49.] But the full range of the circuit court's careful exercise of discretion extended into the subsequent motion for reconsideration. Though the court was not required to hold a hearing on Michael's motion to reconsider, it did so because it "didn't want [its] displeasure at Mr. Sortland to be unfairly reflected on his client[.]" The court stated it wanted to assure itself that it had not "acted with emotion as opposed to with reason[.]" After hearing the parties' argument, the court offered a transparent view of its introspection:

> The [c]ourt granted a hearing on a motion to reconsider because the [c]ourt had felt a large amount of anger at Mr. Sortland for his manner in conducting the hearing on March 11, to his response to the [c]ourt, to his cavalier attitude, and for the things that [the court] added when [the court] supplemented the record here today which is the idea that Mr. Sortland seems to blame everybody else in the world for conspiring with the defendant here Greg Gibson[.]

[¶50.] And with the benefit of the passage of time following the March hearing and further reflection, the circuit court concluded it had made the correct decision to dismiss the case. The court explained that Sortland's conduct "was dishonest, it was egregious, and then on top of all of that Mr. Sortland came to court and said it was everybody else's problem and everybody else's mistake[.]" In our

view, the decision to dismiss the case as a sanction was within the range of permissible choices.

## Conclusion

[¶51.] Based on the severity and bad faith violation of the solemn authority granted to an attorney by Rule 45, dismissal under Rule 41(b) was not an abuse of discretion. We affirm the circuit court's dismissal and denial of the motion to reconsider.

[¶52.] JENSEN, Chief Justice, and DEVANEY, MYREN, and GUSINSKY, Justices, concur.